UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSEPH BLAKE,                          )
        Plaintiff,              )
                       )
                       )
v.                                     )          C.A. No. 05-10508-RGS
                       )
                       )
ROBERT MURPHY, ET AL.,                 )
        Defendants.             )

MEMORANDUM AND ORDER

STEARNS, D.J.

      For the reasons stated below: (1) the Court dismisses portions of Plaintiff's claims; (2) the clerk is directed to issue summonses as to Defendant Robert Murphy and Defendant Kathleen Dennehy; (3) the claims against the Department of Corrections ("DOC") are dismissed in their entirety and the DOC is dismissed as a party in this action; (4) the United States Marshal's Office shall bear all costs of service of process as directed by the Plaintiff; (5) upon proper service of process by the Plaintiff upon the Defendants, which shall include a copy of this Memorandum and Order, the Defendants shall respond to the claims contained in Plaintiff's Complaint, in accordance with the parameters set forth in this Memorandum and Order; and (6) the Court will consider appointment of *pro bono* counsel for the Plaintiff after the Defendants have filed a responsive pleading in this action, unless Plaintiff advises the Court within thirty (30) days that he wishes to proceed *pro se*.

BACKGROUND

      On March 8, 2005, Plaintiff Joseph Blake, an inmate at the Nemansket Correctional Center in Bridgewater, MA, ("Bridgewater") filed his self-prepared § 1983 Complaint against Robert Murphy, Superintendent, and Kathleen Dennehy, Commissioner of the Department of

Corrections, and the Department of Corrections ("DOC"), seeking injunctive relief and damages for alleged violations of his civil rights, including ADA, Equal Protection, and Due Process claims.  Blake has completed his criminal sentence and is awaiting a decision from the trial court judge as to whether he is a Sexually Dangerous Person pursuant to Mass. Gen. Laws ch. 123A.

More specifically, Blake claims that, as a civil committee, he is being held under conditions which are more restrictive than the prison conditions to which he was subjected while he was a prisoner.  Compl. at ¶ 1.  Blake served eight months at MCI Concord, and completed his sentence at NCCI Gardner.  Id. at ¶ 10.   He was then transferred to Bridgewater in order to await judicial determination as to his status as a Sexually Dangerous Person, pursuant to Mass. Gen. Laws ch. 123A.  Id. at ¶ 1.   In his Complaint, Blake outlines in detail how Bridgewater differs from the prior institutions where he was imprisoned, as evidence that the state has not utilized the "least restrictive alternative" in detaining him.

Blake also asserts that the Defendants have failed to "provide the minimal civilized measure of life's necessities."  Id. at ¶ 50, 85.  In addition, Blake alleges that Mass. Gen. Laws ch. 123A (allowing proceedings for civil commitment as a Sexually Dangerous Person) is unconstitutional as applied to him. Id. at ¶ 87.  Blake further argues that Mass. Gen. Laws ch. 123A violates the Americans with Disabilities Act.  Id. at ¶ 79-82.  Blake also alleges that there are several constitutional violations regarding access to legal assistance or a law library, religious expression, and general living conditions at Bridgewater.  Id. at ¶¶ 15-26, 35-37, 47-48, 50-56, 84-85.   Blake's Complaint includes denial of such resources as the internet, unrestricted copying of legal materials and grievances, computers, and typewriters with spell-check or memory functions.  Id. at ¶¶ 20, 35-37.   Blake further alleges that Bridgewater employs

intrusive and embarrassing strip searches, as well as requiring civil committees to strip when giving urinalysis samples.  Id. at  ¶¶ 28, 49, 68.

      With regard to general living conditions at Bridgewater, Blake alleges, *inter alia*, that there is a lack of decent jobs for inmates, and that the wages for available jobs are too low.  Id. at ¶ 32.  Blake also alleges that cells are small, and that double bunking is improper, and that there is overcrowding.  Id. at ¶¶ 47, 50-53.  He further alleges that there has been a cessation of a previous custom of allowing prisoners to create crafts for sale.  Id. at ¶ 33.  Blake further raises numerous complaints about all aspects of confinement, including, *inter alia*, the inability to bring reading material/games/large radios to the yard or gym, inability of prisoners to share reading material, a lack of toilet facilities in the yard, lack of equipment in the yard and gym, insufficient time in which to access the yard and gym, lack of ability to purchase ice cream in the yard, the installation of push-button showers that restrict the available amount of hot water, as well as general complaints about the inmates' abilities to purchase or possess specific appliances and clothing.  Id. at ¶ 21-47.  Blake also complains about the unavailability of certain foods at Bridgewater, stating that, while a prisoner at M.C.I. Norfolk, he was able to purchase "...hamburger, chicken, onions, peppers, garlic, oranges, bananas, apples, pancake mix, flour, crisco [sic] oil, and four flavors of Ben & Jerry's Ice cream [sic].  These items are not available to residents of the Nemansket Correctional Center..." Id. at ¶ 29.

      With regard to restrictions placed on his religious expression, Blake alleges that there is a refusal of the institution to provide a "sweat lodge," as well as a denial of certain sacred items (rattle, sage, sweet grass, cedar, music CDs).  Id. at ¶ 48.  In addition, Blake alleges that there has been an improper denial of Native American religious literature.  Id.  He contends that there

have been severe restrictions placed on the shared meeting space for group worship, as well as restricted access to certain sacred items and lack of storage space. Id.

Further, with respect to Blake's claims of violations of the ADA, he alleges that he "has been diagnosed as having a mental impairment that substantially limits one or more of the major life activities by requiring that he be confined to a secure mental treatment facility." Id. at ¶ 79. Blake further alleges that the defendants have denied him benefits, have failed to provide him with services appropriate to his needs, and have subjected him to discrimination "based solely by reason of his disability." Id. at ¶¶ 81-82.

Blake is seeking preliminary injunctive relief regarding conditions of confinement, restrictions on telephone calls, and denial of computer/appliance purchases. Compl. at "Relief" ¶ 1-2. Blake is also seeking money damages for commissions on collect phone calls paid by Blake to the General Fund of the Commonwealth. Id. at ¶ 2. In addition, Blake demands an injunction concerning the grievance process currently available at Bridgewater. Id. at ¶ 4. Further, Blake is seeking a declaration that Mass. Gen. Laws ch. 123A is unconstitutional as it is applied to him, and he seeks immediate release upon such a declaration. Id. at ¶ 3. Finally, Blake is seeking award of damages, costs and reasonable attorneys fees for violations of his civil rights. Id. at ¶ 5.

Blake has previously sought to proceed *in forma pauperis*, and his motion has been allowed. See Order dated April 11, 2005 (#3). To the extent Blake sought to have this matter certified as a class action suit, such request was previously denied by this Court. See Memorandum and Order dated April 11, 2005 (#4).

DISCUSSION

4

I.    Plaintiff's Complaint is Subject to Screening

Because Blake has sought to proceed *in forma pauperis*, this Court may preliminarily screen the complaint, pursuant to 28 U.S.C. § 1915.  Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of the filing fee if the action lacks an arguable basis either in law or fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting former § 1915(d)); if the action fails to state a claim on which relief may be granted; or if the plaintiff seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2).  *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless.  Id.; Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).  Here, many of Plaintiff's claims are subject to *sua sponte* dismissal, for the reasons set forth below.

II.    Claims Against the DOC

 To the extent that Blake asserts claims for monetary damages against the DOC, the claims must be dismissed because the DOC, as an agency of the Commonwealth of Massachusetts, is not subject to suit in this Court, under the Eleventh Amendment.[1]   Alabama v. Pugh, 438 U.S. 781, 781 (1978) (*per curiam*) (11th Amendment generally is recognized as a bar

---

[1]The Eleventh Amendment to the United States Constitution provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. Amend. XIV.

to suits against a State, its departments, and agencies unless the State has consented to suit);

Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985) (citing Pugh) (unless a State has "waived

its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued

directly in its own name regardless of the relief sought."); Quern v. Jordan, 440 U.S. 332, 344

(1979) (Congress did not override state's Eleventh Amendment immunity in enacting § 1983);

Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) (there has been no unequivocal abrogation

of the Commonwealth's 11th Amendment immunity).  The Eleventh Amendment comes into

play when "the judgment sought would expend itself on the public treasury ..., or interfere with

the public administration...."  Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-102,

n. 11 (1984) (citations omitted); accord Hafer v. Melo, 502 U.S. 21, 25 (1991) (same).

    Accordingly, it is Ordered that the claims against the DOC are dismissed, and the DOC is

dismissed as a party to this action.

    III.    Claims against Robert Murphy and Kathleen Dennehy

        A.  Claims for Monetary Damages in Their Official Capacity

    In order to state a § 1983 claim, a plaintiff must allege (1) that the conduct complained

of was committed by a "person" acting under color of state law; and (2) that this conduct

deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of

the United States.  Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996) (citing

Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992)).  For the

purposes of § 1983, a state official acting within his/her office,  is not a "person" under the

statute, and therefore may not be held liable for monetary damages.  Will v. Michigan

Department of State Police, 491. U.S. 58, 71 (1989).  Moreover, states themselves do not

6

constitute a "person" under the statute, and a plaintiff cannot sue an official as a means of attacking the state itself.  See Id. at 64-71.  The Court in Will stated, "[o]bviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  Id. at 71.  As noted previously, states are immune from suit in federal court under the Eleventh Amendment.

Thus, to the extent that Blake has asserted claims for monetary damages under § 1983 against Defendant Robert Murphy and Defendant Kathleen Dennehy, in their official capacities as Superintendent and Commissioner of the Department of Corrections, respectively, such claims must be dismissed.

### B.  Claims for Injunctive Relief

While state officials are not "persons" for the purposes of damages under § 1983, state officials are "persons" for the purposes of seeking prospective relief.  See Ex Parte Young, 209 U.S. 123, 159-160 (1908) (in such circumstance the proceeding "does not effect the state in its sovereign or governmental capacity," the officer is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct."); Pueblo International, Inc. et al. v. De Cardona, et al., 725 F.2d 823, 827 (1st Cir. 1984) (11th Amendment immunity does not apply to injunctive or declaratory relief.) (citing Ex Parte Young).

Therefore, the Court will permit Blake's claims against the Defendants Murphy and Dennehy to the extent that he seeks declaratory or injunctive relief.  The Court also directs the clerk to issue summonses as to these Defendants, with costs of service to be borne by the United States Marshal's Office.

C.  <u>Request for Preliminary Injunctive Relief</u>

In his Complaint, Blake seeks immediate injunctive relief as to conditions of confinement, restrictions on telephone calls, denial of computer/appliance purchases, and the institution's grievance process.

To obtain the extraordinary remedy of preliminary injunctive relief, a plaintiff must show that: (1) he will suffer irreparable harm absent the injunction; (2) the injury outweighs the harm to the defendants if granted; (3) he is likely to succeed on the merits of the case, and (4) the injunction does not adversely affect the public interest.  <u>See</u> <u>Narragansett Indian Tribe, et al., v. Guilbert</u>, 934 F.2d 4, 5 (1st Cir. 1991); <u>Planned Parenthood League of Mass. v. Bellotti</u>, 641 F.2d 1006, 1009 (1st Cir. 1981); <u>See</u> <u>also</u> <u>Weaver v. Henderson</u>, 984, F. 2d 11, 12 (1st Cir. 1993); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bishop</u>, 839 F. Supp. 68, 70 (D. Mass. 1993) (extending four part preliminary injunction test to temporary restraining orders).

Here, the Court will not construe Blake's request in the Complaint as a motion for a preliminary injunction because preliminary injunctions may <u>not</u> be issued without notice to the adverse party, and the request does not appear to have been served on the Defendants.  <u>See</u> Fed. R. Civ. P. 65(a)(1).  Moreover, to the extent Blake seeks an *ex parte* restraining order, such relief may be sought pursuant to Fed. R. Civ. P. 65(b).[2]  The same four-factor test for preliminary

---

[2]Rule 65(b) states that:

> A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be

injunctions also has been extended to temporary restraining orders.  Levesque v. State of Maine, 587 F.2d 78, 80 (1st Cir. 1976); see Butler v. Maine Sup. Jud. Ct., 758 F. Supp. 37, 38 (D. Me. 1991) (applying criteria).  A party seeking an *ex parte* temporary restraining order must allege that his injury or loss is "immediate and irreparable" and will occur before the adverse party or that party's attorney can be heard in opposition to the motion.  Fed. R. Civ. P. 65(b). Additionally, it is "critical" for the moving party to establish that there is a likelihood of success on the merits.  A party who is unable to convince the trial court that they will probably succeed on the merits is not eligible for interim injunctive relief.  Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).   Finally, the party's attorney (or the party himself, if proceeding *pro se,* as here) must certify to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.  Id.

As an initial matter, the Court recognizes that Blake has failed to certify his efforts to give notice to the named Defendants in this action.  The failure to do so provides sufficient grounds for denial of the request.  See Thompson v. Ramirez, 597 F. Supp. 726, 726 (D. P.R. 1984) (denying temporary restraining order, in part, where there had been no certification to court in writing, of the efforts, if any, of notification to adverse parties).

More importantly, however, because Blake has not alleged sufficient facts demonstrating that he will suffer irreparable harm requiring *ex parte* injunctive relief, and because, at this juncture, he has not demonstrated a likelihood of success on the merits, the Court will deny any request for injunctive relief asserted in the Complaint, without prejudice.

---

     required.

Fed. R. Civ. P. 65(b).

D.  No *Respondeat Superior* Liability

Concomitant to Blake's claims against Defendants in their official capacity,  Blake has made claims against the Defendants in their individual, supervisory capacity.  Such claims are also subject to dismissal because they are based on the theory of *respondeat superior,* or liability based on responsibility for the actions of their employees.   It is well settled that liability under § 1983 is direct, not vicarious. Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (no *respondeat superior* liability under § 1983; liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights). see Guzman v. City of Cranston, 812 F.2d 24, 26 (1st Cir. 1987).  Supervisory liability may be "imposed against the supervisory official in his individual capacity for his own culpable action or inaction in training, supervision, or control of his subordinates." Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987). Thus, liability cannot be based solely on an employer-employee relationship with a tortfeasor. See Rodriguez-Vazquez v. Cintron-Rodriguez, 160 F. Supp. 2d 204, 210-213 (D. P.R. 2001) (dismissing claims; allegation that defendant was "ultimately responsible for the selection and/or supervision and/or training and/or discipline of his subordinates" was insufficient).

Here, Blake has failed to set forth sufficiently any claims of underline direct liability against the Defendant Kathleen Dennehy based on any personal actions or inactions.  Accordingly, the § 1983 claims against her in her individual (as opposed to official) capacity are also dismissed, without prejudice.

However, with respect to Superintendent Robert Murphy, he may be held directly involved in the alleged constitutional violations is there is an "affirmative link" between the

10

alleged misconduct of a subordinate and the action or inaction of the supervisor.  See Rizzo v. Goode, 423 U.S. 362, 371 (1976); Wilks v. Young, 897 F.2d 896, 898 (7th Cir. 1990). See also Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999).  Thus, where a supervisor who has the day-to-day control over the operations of the prison facility has imposed a policy or practice with respect to the conditions of confinement, he may be held liable if such policy impermissibly impinges on an inmate's constitutional rights.  Accordingly,  the Court will permit a summons to issue with respect to Superintendent Murphy.

IV.    Claims Regarding Conditions of Confinement

Although many of Blake's claims concerning his conditions of confinement may be subject to dismissal, the Court will not dismiss such claims *sua sponte* at this juncture.  Rather, in order to explore fully the conditions of confinement under which Blake is subjected, the Court will require the Defendants to file a comprehensive response to his claims.

Accordingly, upon proper service on the Defendants Murphy and Dennehy, the Defendants are directed to file a response to the Complaint, subject to the parameters set forth in this Memorandum and Order, which responds substantively to the allegations raised by Blake that he is not being held under conditions which are the least restrictive alternative.  Defendants shall address specifically each issue raised by Blake concerning these conditions, including (1) restrictive visitation rules; (2) lack of available yard time and gym exercise and equipment; (3) overcrowding and double-bunking;[3] (4) the alleged practice of embarrassing strip search

---

[3]While the Court recognizes that double bunking does not amount to a *per se* constitutional violation, see Cote, et al. v. Murphy, et al., C.A. 03-10716-DPW, Memorandum and Order (#53) aff'd, Cote, et al. v. Murphy, et al., (1st Cir. October 21, 2005)(No. 04-2538), the Court will not dismiss this claim *sua sponte*, and the Defendants shall be required to file a

practices and urinalysis testing; (5) the lack of varied food/meal menus and lack of optional food

purchases; (6) availability of lamps, personal items of clothing, and small appliances for cell use;

(7) failure to accommodate the practice of the Native American religion (addressing the

allegation that Blake is denied access to a "sweat lodge," and sacred items (rattle, sage, sweet

grass, cedar, music CDs, Native American literature)); (8) the lack of computer,  typewriting,

and xerox equipment and restricted law library access; (9) restrictions on telephone usage; and

(8) availability of hot water (in connection with push-button showers).

In addition, Defendants shall address Blake's ADA claims and his claim challenging the

constitutionality of Mass. Gen. Laws ch. 123A as applied to Blake.   In their response,

Defendants shall address, in detail, whether the complained-of conditions of confinement

constitute the "least restrictive alternative" and/or "least restrictive conditions" available at the

Bridgewater facility.

V.      Appointment of Counsel

Blake has not filed a motion for appointment of counsel at this time.  However, in view

of the complex nature of the case and the seriousness of the allegations presented, the Court will

consider appointment of *pro bono* counsel on behalf of Blake, after the Defendants have been

served and have filed a responsive pleading, unless Blake advises this Court, in writing, within

thirty (30) days of the date of this Memorandum and Order, that he wishes to proceed *pro se* and

does not want appointed counsel to represent him.  The determination whether *pro bono* counsel

---

response to this allegation.

will be appointed will rest, in part, on whether, after reasonable efforts by the *pro bono*

coordinator, *pro bono* counsel can be secured in this litigation.

CONCLUSION

In light of the above, it is hereby ORDERED:

1.    Portions of Plaintiff's claims are dismissed as set forth in this Memorandum and Order;[4]

2.    The clerk is directed to issue summonses as to Defendant Robert Murphy and Defendant Kathleen Dennehy;

3.    The claims against the Department of Corrections ("DOC") are dismissed in their entirety and the DOC is dismissed as a party in this action;

4.    The United States Marshal's Office shall bear all costs of service of process as directed by the Plaintiff;

5.    Notwithstanding that the United States Marshal's Office shall bear all costs of service, Plaintiff shall arrange for service of process by the Plaintiff upon the Defendants, which shall include a copy of this Memorandum and Order;

6.    Upon proper service, the Defendants shall respond to the claims contained in Plaintiff's Complaint, in accordance with the parameters set forth in this Memorandum and Order; and;

7.    The Court will consider appointment of *pro bono* counsel for the Plaintiff after the Defendants have filed a responsive pleading in this action, unless Plaintiff advises the Court within thirty (30) days that he wishes to proceed *pro se*.

SO ORDERED:

DATED: October 31, 2005                        /s/ Richard G. Stearns
                                               RICHARD G. STEARNS
                                               UNITED STATES DISTRICT JUDGE

---

[4]These include the claims against Defendants Dennehy and Murphy, in their official capacity, for monetary damages; the claims against Defendants Dennehy and Murphy based on *respondeat superior* theory of liabilty, and all claims against the DOC.