UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10508-RGS

JOSEPH GENTLE MOOSE BLAKE

v.

ROBERT MURPHY and
KATHLEEN DENNEHY

MEMORANDUM AND ORDER ON
MOTION FOR SUMMARY JUDGMENT

February 9, 2010

STEARNS, D.J.

Joseph Gentle Moose Blake, who has been adjudicated a sexually dangerous person (SDP), is a civilly-committed inmate at the Nemansket Correctional Center in Bridgewater, Massachusetts (Center). Blake brought this action against officials of the Department of Correction (DOC) objecting to his conditions of confinement. On March 10, 2009, the court issued a Memorandum and Order in response to Magistrate Judge Bowler's Report and Recommendation on defendants' first motion for summary judgment. This court agreed with Magistrate Judge Bowler that defendants had failed to make a showing of legitimate penological interest sufficient to justify their refusal to act on Blake's petition for construction of a sweat lodge and access to sacramental items associated with Native American religious rituals.[1] The parties subsequently engaged in discovery focused

---

[1] Further acting on the Magistrate Judge's Report and Recommendation, the court dismissed Blake's claims of violations of the Double Jeopardy Clause (Counts I and II); violation of his right to substantive due process (Counts V and VI); violation of his right to equal protection (Counts VII and VIII); and violations of the Eighth Amendment's Cruel and Unusual Punishments Clause (Count IX or X).

on Blake's First Amendment free exercise claims. On January 19, 2010, defendants filed a second motion for summary judgment. Blake opposes the motion. The court heard oral argument on February 5, 2010.

## BACKGROUND

Blake, who is represented by counsel in this matter, filed a parallel case pro se in Worcester Superior Court on March 18, 2005, ten days after filing the instant lawsuit in federal court. Blake's state court case made identical claims.[2] On December 2, 2009, Associate Justice Bruce Henry of the Massachusetts Superior Court issued a Memorandum and Order dismissing Blake's state case. See Blake v. Howland, 2009 WL 5698078 (Mass. Super. Dec. 2, 2009). Because the facts are set out in exquisite detail in Justice Henry's decision (and differ in no material respect from those recited in earlier decisions of this court), only a brief summary is provided here.

Blake belongs to the Native American Spiritual Awareness Council (NASAC), a religious group practicing traditional Native American beliefs. NASAC adherents housed at the Center gather for worship services on Monday afternoons. If weather permits, the ceremony is held outdoors. In inclement weather, worship services are held in the Center's chapel. NASAC rites include smudging (the burning of dried herbs known as Kinnik-Kinnik in an abalone shell and then smoking the residue in a ceremonial pipe). Prayers are recited using a talking stick and drum. An eagle feather is an essential accouterment of sacral observance, as is Native American music. NASAC members also

---

[2] In state court, Blake also asserted a claim for violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq*. Blake does not assert a RLUIPA claim in this case.

2

celebrate the twice yearly solstices and equinoxes. Ceremonial meals are served at the observances consisting of turkey and the "three sisters" – corn, squash, and lima beans.

At the heart of Blake's First Amendment claim is the allegation that NASAC members at the Center are being denied access to sacramental items deemed essential to the correct practice of Native American religion.[3] In particular, Blake seeks construction of a purification (sweat) lodge on the grounds of the Center.[4] The defendants have denied Blake's request for the stated reason that the wood fire required by the lodge would adversely impact air quality at the Center and the health of inmates and staff.[5]

## DISCUSSION

---

[3] The parties dispute whether the Center provides NASAC adherents with access to sacral items that are sufficiently authentic, including pipes, drums, and chokers. According to Blake, the Center's current vendor of religious articles provides only toy drums, a smoking pipe made in London, and children's chokers. Blake also complains that detainees have not been permitted to purchase certain traditional Native American foods, such as buffalo, whole fish, jerky, and dried berries.

[4] A purification lodge is built by placing sapling trees in a circle, then bending and joining their crowns in the shape of a dome. The resulting frame is covered with tarpaulins and blankets. A fire pit is dug in the center of the lodge. A second fire pit outside the entrance to the lodge is used to heat rocks to generate heat for the purification ceremony.

[5] Defendants offer the results of two test fires that were conducted at the Center on January 30, 2009, and February 25, 2009. According to defendants, smoke from the fires penetrated the entire facility and could be smelled in the Center's corridors, housing units, gym, and dining areas. This occurred despite the fact that the outside dampers of the ventilation system were set at the minimum level of intake for outside air. Blake argues that the test fires were conducted in a prejudicial manner and that any smell of smoke inside the Center was minimal. According to Blake, the test fires were not representative of a true ceremonial fire because they were, *inter alia*, conducted too close to the air intake of the ventilation system; were overseen by a novice who had no experience building ceremonial fires; were four times larger than an actual ceremonial fire; were built on snow, making the fires excessively smoky; were built with wood that appeared to have been stained or painted; and were not built inside of a pit.

Justice Henry granted summary judgment to the defendants on all counts of Blake's state court Complaint, with the exception of his First Amendment claims, on which Justice Henry deferred to the federal court.[6] Justice Henry noted that his "ruling that Blake's claim fails under [cognate art. 16 of] the Massachusetts Constitution, which affords more protection to the free exercise of religion than that afforded by the United States Constitution, would suggest Blake's First Amendment claim may fail . . . ." Blake, 2009 WL 5698078, at *10.

As an initial matter, the court finds that any relitigation of the factual issues underlying Blake's state-court claims in the federal court is barred by the doctrines of issue and, to a lesser extent, claim preclusion (*res judicata*).[7] Issue preclusion "prohibits a party from re-litigating issues that have previously been adjudicated." Enica v. Principi, 544 F.3d 328, 336 (1st Cir. 2008), citing Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 327 n.5 (1979). "It is well settled that state court decisions have the same preclusive effect in federal courts that they would have in the state where the judgment was issued." Miller v. Nichols, 586 F.3d 53, 60 (1st Cir. 2009). As the First Circuit has noted, the Massachusetts Supreme Judicial Court (SJC) has held that issue preclusion applies when

---

[6] Justice Henry entered judgment in favor of defendants and dismissed the following claims: violations of art. 16 of the Massachusetts Declaration of Rights; violations of RLUIPA; and violations of the Massachusetts Civil Rights Act, Mass. Gen. Laws. ch. 12, § 11I.

[7] The two branches of the doctrine are very similar. "For a claim to be precluded, the following elements must be present: (1) a final judgment on the merits in an earlier suit; (2) sufficient identicality between the causes of action asserted in the earlier and later suits; and (3) sufficient identicality [or privity] between the parties in the two suits." Apparel Art Int'l, Inc. v. Amertex Enters., Ltd., 48 F.3d 576, 583 (1st Cir. 1995).

> (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally the issue decided in the prior adjudication must have been essential to the earlier judgment.

In re Sonus Networks, Inc., Shareholder Derivative Litig., 499 F.3d 47, 57 (1st Cir. 2007), citing Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843 (2005). All of the above elements are met here.

Massachusetts law also requires that for collateral estoppel to serve as a complete bar, "there must have been available some avenue for review of the prior ruling on the issue." Sena v. Commonwealth, 417 Mass. 250, 260 (1994). As the SJC noted in Sena, this rule comports with Restatement (Second) of Judgments § 28 (1982), which states that "relitigation of the issue in a subsequent action between the parties is not precluded [where] [t]he party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action . . . ." Sena, 417 Mass. at 260 n.7. Here, review was readily available (although Blake chose not to pursue it) in the Massachusetts Appeals Court and ultimately the SJC. Because all of the requirements of Massachusetts (as well as federal) law have been satisfied, preclusion applies in Blake's federal case.[8]

---

[8]Blake argues that to apply preclusion in his case is unjust because the state court findings were not the "product of full litigation and careful decision." Fidler v. E.M. Parker Co., Inc., 394 Mass. 534, 541 (1985). Blake contends that his lack of legal representation in the state court prejudiced his cause and that of others similarly situated. Blake states that he did not conduct meaningful discovery, including depositions, and did not oppose defendants' motion for summary judgment with the vigor that a trained lawyer could have brought to the case. Blake also accuses defendants' counsel of "strategic maneuvering" to "take advantage" of his lack of legal representation in the state case. Blake states that

As previously noted, Justice Henry found in favor of defendants on Blake's RLUIPA claim. The First Amendment affords significantly less protection to the free exercise rights of inmates and detainees than RLUIPA. See Lovelace v. Lee, 472 F.3d 174, 199-200 (4th Cir. 2006). RLUIPA prohibits government from imposing a "substantial burden" on the religious exercise of a person "residing in or confined to an institution," unless government demonstrates that its policy is in furtherance of a "compelling" governmental interest and that it is the "least restrictive means" of furthering that interest.[9]  42 U.S.C. § 2000cc-1(a).

---

he, through counsel in his federal case, offered to drop the federal case if defendants would agree to stay their summary judgment motion in the state case and allow for a period of discovery. He states, however, that "[d]espite the obvious benefit to the defendants and the judicial systems involved, defendants refused." The court has little sympathy for this argument as the problem is one of Blake's own making, and misleading in a significant instance. First, it was Blake's decision to file parallel actions in state and federal court. Not only was this an abuse of judicial resources, it was also risky as events have proved. Second, Blake had access to the data generated by the test fires that this court authorized in the federal case. (It is disingenuous for counsel to claim otherwise as he did in the federal hearing). Finally, Blake argues that Justice Henry did not address the defendants' alleged delay in responding to Blake's request for religious accommodations. However, Justice Henry specifically referenced the six-year duration of Blake's dispute with defendants. See Blake, 2009 WL 5698078, at *3. He nonetheless stated that his opinion applied to "all pleaded claims, whether or not specifically referenced." Id. at *1 n.1.

[9]The First Circuit (and by extension the Supreme Court) has yet to offer a conclusive definition of a "substantial burden." Some Circuits have adopted formulations of the standard set forth by the Supreme Court in Turner v. Review Bd. of Indiana Employment Sec. Div., 450 U.S. 707, 716-717 (1981) ("Where the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists."). Other Circuits utilize the slightly stricter standard suggested in Sherbert v. Verner, 374 U.S. 398, 404 (1963) (a substantial burden exists when an adherent is forced "to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept [a benefit], on the other hand."). See, e.g., Lovelace, 472 F.3d at 187, citing Thomas, 450 U.S. at 718 (a substantial burden occurs when a state or local government, through act or omission, "put[s] substantial pressure on an adherent to modify his behavior and to violate

The First Amendment, on the other hand, requires only that institutional restrictions on the religious rights of inmates and civilly-committed detainees, be "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987).[10] Here, because defendants have been found to have satisfied the RLUIPA burden, it follows that there is no violation of the First Amendment.[11]

ORDER

---

his beliefs."); Adkins v. Kaspar, 393 F.3d 559, 570 (5th Cir. 2004) ("[A] government action or regulation creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs. . . . [A] government action or regulation is significant when it either (1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs."); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004) ("[A] substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct."). In practice, it is not clear that the decisional nuances in defining a substantial burden have any practical significance.

[10]Blake argues that because he is an SDP and not a prisoner, his claims should be subject to a stricter review than the "reasonableness" standard mandated by Turner v. Safely. While the First Circuit has not addressed this issue, the court notes that a number of courts apply the analysis in Turner to SDP civil detainees. Marsh v. Liberty Behavioral Health Care, Inc., 2008 WL 821623 at *5 (M.D. Fla. March 27, 2008) (applying analysis set forth in Turner to involuntary civilly committed detainee's free exercise claim); Mahaffey v. Major, 2008 WL 508463, at *2 (D.S.C. Feb. 21, 2008) (same). See also Mustafa-Ali v. Irvin, 2007 WL 2302278, at *6 (S.D. Miss. Aug. 9, 2007) (applying Turner to pretrial detainee's alleged denial of religious literature and prayer rug); Thaxton v. Strode, 2007 WL 1662328, at *3 (W.D. Ky. June 23, 2007) (same). In any event, a stricter standard was met given Justice Henry's finding that the RLUIPA's requirement that the government show the "least restrictive" means of achieving a "compelling interest" has been satisfied.

[11]This reasoning is also supported by Justice Henry's ruling that defendants did not violate Blake's right to free exercise under art. 16 of the Massachusetts Declaration of Rights, which requires that government demonstrate a "compelling interest" in imposing any burden on the exercise of religion. Ahmad v. Dep't of Corr., 446 Mass. 479, 486 (2006). Like RLUIPA, this is a stricter standard than the reasonableness standard imposed under Turner v. Safely and the First Amendment.

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE